Ryan Gile, Esq.
*rg@gilelawgroup.com*
Nevada Bar No. 8807
**GILE LAW GROUP LTD**.
1180 N. Town Center Drive, Suite 100
Las Vegas, NV 89144
Tel. (702) 703-7288

*Attorney for Plaintiff Finnmark Designs, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FINNMARK DESIGNS LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ROBYN OPENSHAW, an individual; GREENSMOOTHIEGIRL.COM, INC., a Utah Corporation, d/b/a INFL PRODUCTS; GREENSMOOTHIEGIRL.COM INC., a Florida Corporation,<br><br>Defendants. | Case No. 2:23-cv-00018-JCM-VCF<br><br>**PLAINTIFF FINNMARK DESIGNS, LLC'S SUPPLEMENTAL COMPLAINT UNDER FED. R. CIV. P. 15(D)**<br><br>**JURY DEMAND** |

Plaintiff FINNMARK DESIGNS, LLC ("Plaintiff" or "Finnmark"), by and through its attorney of record, brings this Supplemental Complaint against Defendants ROBYN OPENSHAW, an individual; GREENSMOOTHIEGIRL.COM, INC., a Utah corporation, d/b/a INFL PRODUCTS; and GREENSMOOTHIEGIRL.COM INC., a Florida corporation (together, "Defendants"), and hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. Finnmark initiated this action on December 1, 2022, in the Eighth Judicial District Court of Clark County, Nevada, for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Alter Ego, Fraud in the Inducement, and Equitable and Injunctive Relief ("Original Complaint"). On January 5, 2023, the action was removed to the United States District Court for the District of Nevada. (ECF No. 1.)

2. Finnmark files this Supplemental Complaint based on new facts which have arisen since the filing of the Original Complaint on December 1, 2022. Specifically, Defendants have

GLG-30715                                       1

made inaccurate, disparaging, and defamatory comments regarding Finnmark since the filing of the Original Complaint, giving rise to an additional cause of action against Defendants for trade libel.

**PARTIES**

3. Plaintiff FINNMARK DESIGNS, LLC is, and at all relevant times was, a Nevada limited liability company authorized to and doing business in this Judicial District.

4. Defendant ROBYN OPENSHAW ("Openshaw") is an individual formerly residing in the state of Utah and currently residing in St. Johns County, Florida.

5. Defendant GREENSMOOTHIEGIRL.COM, INC ("GSG-UT") is, and at all relevant times was, a Utah corporation.

6. Defendant GREENSMOOTHIEGIRL.COM, INC ("GSG-FL") is, and at all relevant times was, a Florida corporation.

7. Upon information and belief, GSG-FL was formed in December 2021 and is the successor-in-interest to GSG-UT with respect to the contract matters at issue in this case.

8. Upon information and belief, Defendant GSG-UT is directly or indirectly wholly or principally owned and controlled by Defendant Openshaw and as such is Defendant Openshaw's alter ego.

9. Upon information and belief, Defendant GSG-FL is directly or indirectly wholly or principally owned and controlled by Defendant Openshaw and as such is Defendant Openshaw's alter ego.

10. Upon information and belief, at all relevant times hereto, Defendant Openshaw was an owner, shareholder, director, officer, principal, partner and/or manager of Defendant GSG-UT and personally directed, controlled, ratified, participated in, authorized and/or directly benefited from the actions described herein.

11. Upon information and belief, at all relevant times hereto, Defendant Openshaw was an owner, shareholder, director, officer, principal, partner and/or manager of Defendant GSG-FL and personally directed, controlled, ratified, participated in, authorized and/or directly benefited from the actions described herein.

12. Unless otherwise specifically stated, any references to Openshaw or Defendant Openshaw herein shall refer to Defendant Openshaw both in her individual capacity as well as in her capacity as an owner, shareholder, director, officer, principal, partner and/or manager of Defendant GSG-UT.

13. Unless otherwise specifically stated, any references to Openshaw or Defendant Openshaw herein shall refer to Defendant Openshaw both in her individual capacity as well as in her capacity as an owner, shareholder, director, officer, principal, partner and/or manager of Defendant GSG-FL.

14. At all relevant times hereto, each Defendant was the agent, servant, employee, representative, alter-ego, and/or co-conspirator of each of the other Defendants, and was at all times acting within the scope of such agency, affiliation, employment, alter-ego relationship and/or conspiracy with the knowledge, consent, ratification, authorization, and/or at the direction of each Defendant, or is otherwise responsible in some manner for the occurrences in this Complaint.

## JURISDICTION AND VENUE

15. This district court has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. §§ 1441 and 1332(a).

16. This Court has personal jurisdiction over the Defendants because they have purposefully availed themselves of the protection of the laws of the State of Nevada and have affirmatively directed contact towards the State of Nevada as a result of the contractual agreements entered into with Plaintiff from which this dispute arises. Additionally, Defendants, though the acts complained of herein, have directed unlawful actions towards and thereby knowingly and intentionally causing (and/or intending to cause) harm and injury to a resident of this Judicial District

17. Venue is proper because a substantial part of the events giving rise to contracts at issue and defamation claims relating thereto occurred in this judicial district.

/ / /

/ / /

/ / /

**SUPPLEMENTAL FACTUAL ALLEGATIONS**

18. Plaintiff hereby repeats, realleges, and incorporates by reference all of the allegations set forth in the Original Complaint as though fully set forth herein to the extent such allegations are not otherwise expressly repeated and realleged herein.

*Marketing Agreement and Defendants Allegations of Stolen Sales*

19. On October 1, 2020, Finnmark and Defendants entered into a 3-year "Exclusive Influencer Agreement" (the "Marketing Agreement").

20. Under the Marketing Agreement, Defendants were to receive a Tier 1 commission for each sale promoted by Defendants. Defendants were allowed to recruit and make an override on all sales promoted by third-party sub-influencers for three specific saunas (the Influence Hybrid, Influence 2-3 and Influence 3-4 person infrared saunas, together the "Influence Saunas") between the months of October 1 and May 1 annually. In such instances, the sub-influencers would receive the Tier 1 commission and Defendants would receive a reduced Tier 2 commission for each sale.

21. On October 11, 2022, Defendants sent an email to Finnmark which accused Finnmark of "stealing commissions" from Defendants without providing any evidence or factual data regarding which customers Defendants claimed had purchased saunas where Defendants were owed commissions. Defendants demanded immediate payment from Finnmark of such commissions, along with several other unjustified demands without basis in the Marketing Agreement.

22. On October 11, 2022, Finnmark responded to Defendants' allegations of stolen commissions and requested that Defendants send over the relevant customer information so Finnmark could investigate such allegations to determine their veracity. At no point did Finnmark indicate that it would not pay any commissions rightfully owed.

23. On October 12, 2022, Defendants sent an email back to Finnmark making more egregious claims while conspicuously refusing to provide any specific customer information which would allow Finnmark to investigate Defendants' allegations.

24. On October 12, 2022, Finnmark emailed Defendants again requesting Defendants

produce the customer information so that such information could be reviewed and, in the event there was a substantiated instance of crossover where a commission payment was due, then such payment to Defendants could be arranged.

25. Finnmark informed Defendants that there were over 2,000 sales during the relevant period at issue and that there might naturally be some crossover as is typical with any sales organization. Indeed, Defendants were well aware of instances of crossover occurring during the term of the Marketing Agreement, including times when customers contacted Finnmark initially on their own and then later contacted Finnmark through one of Defendants' marketing campaigns – and where Defendants would later claim such sale type as one to which Defendants were owed a commission even though such customers had contacted Finnmark first and thus Defendants were not owed any commissions under the Marketing Agreement.

26. Moreover, potential instances of crossover were exacerbated by Defendants' own actions, specifically Defendants' deliberate refusal beginning in 2020 to provide Finnmark with Defendants' opt-in list of customers so that Finnmark would know which customers that might be contacting Finnmark were ones that came from Defendants' marketing efforts as well as know which customers had actually already contacted Finnmark before contacting Finnmark again through Defendants' campaigns.

27. As such, any inaccurate reporting that may have arisen during the course of the Marketing Agreement can be directly attributed in significant part to Defendants' own actions which prevented Finnmark from being able to cross reference customers for accurate reporting and not because of any intentional action on the part of Finnmark to misappropriate sales that otherwise were attributable to Defendants or one of Defendants' sub-influencers.

### *Defendant's Libelous Statements*

28. On information and belief, after the Original Complaint was filed, Defendant Openshaw began sending out emails to numerous sub-influencers who had promoted for Finnmark's saunas previously and making false and defamatory statements about Finnmark and its officer, Garett Gordon, having "stolen" money owed to them and having engaged in illegal conduct.

29.     In particular, on information and belief, Defendant Openshaw sent an email to a third-party sub-influencer named Erin Elizabeth and made multiple false, disparaging and defamatory statements regarding Finnmark and its officer, Garett Gordon, including (without limitation): that Finnmark owed Openshaw and Ms. Elizabeth money; that Openshaw had "discovered" and "proven" that 86 sauna sales had been "stolen" by Finnmark from "26 different influencers"; that Finnmark obtained sales leads "illegally"; and that Finnmark had acted in violation of its contract through such actions. A copy of the email sent out by Openshaw reflecting these false, disparaging and defamatory statements is attached hereto as **Exhibit 1**.

30.     As detailed herein, Openshaw's statements are demonstrably false, disparaging, and defamatory.

31.     Upon information and belief, Defendant Openshaw has sent out a similar defamatory and disparaging email to at least 25 other sub-influencers.

### *Defendants' False Statements About 86 Stolen Sales*

32.     Defendants false, disparaging and libelous statements center around a supposed 86 sauna sales that Defendants assert have been "proven" that Finnmark "stole" from Defendants and sub-influencers.

33.     Given that the total number of relevant sales during the course of the Marketing Agreement was in excess of 2,000 sales, Defendants' accusations over 86 "stolen" saunas amounts to a paltry 4% of the total sales.

34.     Finnmark has conducted an extensive review of each of the 86 sauna sales that Defendants allege Finnmark "stole" – and the results of such analysis demonstrate the clear falsity of Defendants' statements. The following table provides a summary of such sauna sales and their source:

| 22 Sales | Confirmed Finnmark Sales by phone recordings/lead inquires |
|---|---|
| 17 Sales | Finnmark Facebook / website / lead inquires / dealer referrals / Trade Shows / prior database |
| 4 Sales | Sales not under the Contract |
| 3 Sales | Refunded or Cancelled Orders |
| 9 Sales | Canada/Alaska sales |
| 31 Sales | Cruzez Inc. prior sales database |

35. For 22 of the 86 sales, Finnmark has voice recordings and/or lead inquiries that demonstrate the customer never mentioned any influencer and/or was contacting Finnmark directly, and thus Defendants are not entitled to claim these sales as belonging to them in any way, and certainly cannot claim that such sales were "stolen" by Finnmark or that Finnmark engaged in "illegal" activity relative to such sales. *See* **Exhibit 2** attached hereto.

36. For 17 of the 86 sales, such customers resulted from Finnmark's own marketing activities, including its website, Facebook, lead inquiries, dealer referrals, trade shows, or Finnmark's own prior customer database. Defendants are not entitled to claim such sales as belonging to them in any way, and certainly cannot claim that such sales were "stolen" by Finnmark or that Finnmark engaged in "illegal" activity relative to such sales.

37. For 4 of the 86 sales, the specific sauna sold to the customer was not one of the three specifically named Influence Saunas that fell within the scope of the Marketing Agreement giving rise to a commission owed to Defendants. Thus, Defendants are not entitled to claim these sales as belonging to them in any way, and certainly cannot claim that such sales were "stolen" by Finnmark or that Finnmark engaged in "illegal" activity relative to such sales. *See* **Exhibit 3** attached hereto.

38. For 3 of the 86 sales, the customer later cancelled the sauna order. *See* **Exhibit 4** attached hereto. Defendants are not entitled to a commission for a cancelled order and certainly cannot claim that such cancelled orders reflect sales that were "stolen" by Finnmark or that Finnmark engaged in "illegal" activity relative to such sales.

39. For 9 of the 86 sales, the orders came from Canada or Alaska customers. *See* **Exhibit 5** attached hereto.

40. The InfluenceSauna.com website was unable to process such orders, despite Finnmark's request to Defendants' representatives on multiple occasions to update the website to allow orders from Canada or Alaska customers to be processed. Because of Defendants' own inability to process such orders as Influence Sauna orders, such orders would not have been entered into the CRM database used by Defendants to track sales attributable to Defendants' marketing efforts.

41. These orders were processed manually by Finnmark and, without any information from Defendants regarding such customers belonging to Defendants (once again because Defendants deliberately chose not to share its customer information to Finnmark to prevent any crossover), were not attributed to Defendants' marketing efforts.

42. Notably, relative to these nine orders, three of them came in November 2020 and the remaining six came in from January to May 2021.  Defendants' representatives had full and complete access to Finnmark's sauna sales records during the entire period the Marketing Agreement was in effect in order to calculate commissions owed to Defendants – and yet Defendants never brought any of these nine sales to the attention of Finnmark until October 2022 (over a year after the last sale).

43. Given the amount of time that passed before Defendants ever mentioned such sales, they clearly were not ones that Defendants believed were sales for which they were entitled to a commission; rather, Defendants only brought up such sales when Defendants required a pretext in order to claim that Finnmark had somehow breached the Marketing Agreement so that Defendants could then justify their own willful breach of the Marketing Agreement.

44. Regardless, to the extent that Defendants might be entitled to claim these nine sales as belonging to them for commission purposes, the circumstances surrounding such orders certainly do not give rise to a legitimate claim that such sales were "stolen" by Finnmark or that Finnmark engaged in "illegal" activity relative to such sales.

21. Cruzez Inc. (the contracted sales company used by Finnmark) had its own database of customers from the 2014-2018 timeframe (before the Marketing Agreement), which was used for marketing and cross-reference of Influence Sauna leads.  For 31 of the 86 sales, the sauna sales were from customers that were already included in Cruzez Inc.'s customer database, and thus they were not sauna sales for which Defendants were entitled to claim as belonging to them in any way, and certainly cannot claim that such sales were "stolen" by Finnmark or that Finnmark engaged in "illegal" activity relative to such sales.

22. Finnmark, in conducting the aforementioned detailed review of its sales records, also discovered at least 37 sauna sales that were mistakenly credited to Defendants for which

Defendants were actually not entitled to receive any commission for such sales. Such overpayments should be refunded to Finnmark or credited against amounts, if any, otherwise determined by the Court to be owed by Finnmark.

23. In short, Finnmark never stole any sauna sales and thus Defendants' statements that Finnmark did "steal" such sauna sales, that such "stolen" sauna sales were "proven," that Finnmark engaged in "illegal" activity, and that Finnmark violated the Marketing Agreement through such actions are demonstrably false, disparaging and defamatory.

## SUPPLEMENTAL CAUSES OF ACTION

## SIXTH CAUSE OF ACTION[1]

### (Trade Libel)

24. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations of each of the preceding paragraphs of this Complaint as though fully set forth herein.

25. Defendants have made numerous false and defamatory statements of fact about Finnmark's business to third persons.

26. Specifically, Defendants' statements to third parties that Finnmark "stole" sauna sales and that it had been "proven" that Finnmark stole sales are demonstrably false, disparaging, and defamatory statements of fact about Finnmark's business.

27. Defendants knew or should have known that each of these statements were false, disparaging, and defamatory when made, and that Defendants lacked any privilege or justification for making the statements.

28. These statements were and are false and defamatory, and constitute defamation per se, because the statements have a clear tendency to injure Finnmark's business reputation and deter third parties from dealing with Finnmark based on the false impression that Finnmark "stole" sauna sales and otherwise engaged in "illegal" activity.

---

[1] Plaintiff's Original Complaint set forth five causes of action. This Supplemental Complaint recites one additional cause of action. In order to avoid any overlap and keep the causes of action in sequential order, Plaintiff's cause of action in this Supplemental Complaint will be labeled as Plaintiff's Sixth Cause of Action.

Gile Law Group
1180 N. Town Center Dr. Suite 100
Las Vegas, NV 89144

GLG-30715                                    9

29. Furthermore, Defendants made these false statements with malice as the Defendants knew that the statements were false when made and/or had reason to doubt their truthfulness.

30. Defendants' intent in making these false, disparaging, and defamatory statements was to economically damage Finnmark's business. Thus, Finnmark is entitled to an award of exemplary or punitive damages against Defendants for their willful and malicious conduct in an amount to be proven at trial which is appropriate to punish or set an example of Defendants and to deter such conduct in the future.

31. As a direct and proximate result of the wrongful conduct of the Defendants as alleged herein, Finnmark has suffered, and continues to suffer, damages in an amount to be proven at trial. Such damages include, but are not limited to, special damages from a significant decrease in sales of the saunas which had been marketed by Defendants prior to Defendants' material breach of the Marketing Agreement, special damages in the nature of expenses for repairing the damage to Finnmark's reputation caused by Defendants' defamatory statements, and special damages in the nature of incurred legal costs and attorney's fees in bringing this action.

32. Plaintiff has been required to retain the services of an attorney to prosecute this action and is therefore entitled to an award of reasonable costs and attorney's fees incurred herein.

**SUPPLEMENTAL PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests and prays that this Court enter a Judgment and Order in favor of Plaintiff and against Defendants on the supplemental causes of action brought in this Supplemental Complaint as follows:

A. That the Court enter judgment in favor of Plaintiff and against the Defendants, joint and severally, on all claims for relief alleged herein;

B. That Plaintiff be awarded compensatory, special, exemplary, and/or punitive damages pursuant to any applicable law in an amount to be determined at trial;

C. That Plaintiff be awarded reasonable costs and attorneys' fees incurred by Plaintiff in prosecuting this action pursuant to any applicable law;

GLG-30715                                                                 10

D. That Plaintiff be awarded prejudgment and post-judgment interest at the maximum rate allowed by law; and

E. That Plaintiff be awarded all other and further relief to which Plaintiff are entitled and such other and further relief as this Court may deem just.

## JURY TRIAL DEMANDED

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised so triable.

Dated: January 31, 2023

Respectfully Submitted,

**GILE LAW GROUP, LTD.**

*/s/ Ryan Gile*
Ryan Gile, Esq.
Nevada Bar No. 8807
***rg@gilelawgroup.com***
1180 N. Town Center Drive, Suite 100
Las Vegas, Nevada 89144
Tel. (702) 703-7288

*Attorney for Plaintiff Finnmark Designs, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF to all participants in the case who are registered CM/ECF users.

/s/ Ryan Gile
Employee, Gile Law Group Ltd.